This matter is before the court on the parties' cross-motions for summary judgment. At a case management conference held Wednesday, November 8, 2006, the parties agreed that the court should consider the following pleadings: Stipulation of Facts, filed May 16, 2006; Plaintiffs' Motion for Summary Judgment, filed June 15, 2006, including Memorandum in Support of Plaintiffs' Motion for Summary Judgment, Orlando Medina's Affidavit in Support of Plaintiffs' Motion for Summary Judgment, and Affidavit of Susan Russell in Support of Plaintiffs' Motion for Summary Judgment; Defendant's Motion for Summary Judgment and Response to Plaintiffs' Motion for Summary Judgment, filed July 17, 2006; and Plaintiffs' Reply to Defendant's Motion for Summary Judgment and Response to Plaintiffs' Motion for Summary Judgment, filed July 31, 2006. The parties agreed that oral argument was not necessary.
 I. STATEMENT OF FACTS
Plaintiffs, Oregon residents, timely filed an Oregon Form 40 income tax return for tax year 2001 that indicated gambling winnings of $107,231 and claimed gambling losses of that same amount. Plaintiff, Susan Russell (Russell), states in her affidavit that she was a compulsive gambler during tax year 2001, frequenting the following establishments: Spirit Mountain, Oregon; Portland Area Video Poker Bars, Oregon; Lucky Eagle, Washington; Clearwater River, *Page 230 
Idaho; Kamiah Casino, Idaho, Nez Perce Casino. Russell's affidavit states that she gambled on approximately 187 separate occasions and that she played until she lost all the funds that she withdrew from her home safe or automatic teller machines.
Defendant requested that Plaintiffs submit documents to substantiate their claimed gambling winnings and losses. Plaintiffs submitted the following in response to Defendant's request: a letter dated September 29, 2004, accompanied by a schedule designated as a "summary" of "2001 Gambling Expenses identified from Partial Records," three Forms W-2G, a document entitled "Listing of 2001 Gambling Losses," copies of credit card statements, bank statements, Ms. Russell's Schedule C from Plaintiffs' federal income tax return for 2001, and a calendar designated "2001 Gambling Days-For `Cash Taken' Entries." The parties stipulated that Plaintiffs submitted a summary entitled "Amount of 2001 Gambling Expenses Identified from Partial Records," which totaled $100,440. The parties agree that summary total was less than the total ($112,022.86) reported in "Listing of 2001 Gambling Losses." The parties stipulate that none of the gambling that resulted in the claimed gambling losses took place using "key cards" or "club cards" provided by casinos. Key cards and club cards provide a record of coins put into a gambling machine ("coin-in"), and coins the player receives from the machine ("coin-out"). Russell states in her affidavit that it was her practice to net all winnings from a given day against all her losses for a given day because she did not account for each coin-in and coin-out transaction.
The parties agree that the sole issue before this court is whether plaintiffs have presented adequate substantiation and record-keeping sufficient to allow the deduction of the claimed gambling losses for tax year 2001.
 II. ANALYSIS 1, 2. For Oregon income tax purposes, the parties agree that gross income includes all income from whatever source derived, including gambling. See IRC § 61;[1]McClanahan v. *Page 231 United States, 292 F2d 630, 631-32 (5th Cir 1961). The parties agree that Oregon has adopted the federal definition of taxable income, subject to exceptions not relevant to this case.See ORS 316.048 (1999). In computing taxable income, losses sustained during the taxable year on wagering transactions shall be allowed as a deduction by a taxpayer, but "only to the extent of the gains from such transactions." IRC § 165(d). The parties stipulated that, on their filed federal income tax return, Plaintiffs limited their losses from gambling to their reported income from gambling.
A taxpayer has the burden of providing substantiation for deductions, which "are a matter of legislative grace."Hartsock v. Comm'r, 92 TCM (CCH) 297, WL 2734238 at *3 (2006) (Hartsock) (citing Schooler v. Comm'r,68 TC 867, 869 (1977); INDOPCO, Inc. v. Comm'r,503 US 79, 84, 112 S Ct 1039, 117 L Ed 2d 226 (1992)). With respect to the reporting of gambling winnings and gambling losses, the Internal Revenue Service issued general guidelines in Revenue Procedure 77-29. Rev Proc 77-29, 1977-2 CB 538, WL 42691. The Revenue Procedure outlines a taxpayer's "responsibility for maintaining adequate records in support of winnings and losses[,]" as follows:
 "Under Section 6001 of the Code, taxpayers must keep records necessary to verify items reported on their income tax returns. Records supporting items on a tax return should be retained until the statute of limitations on that return expires.
 "* * * * *
 "An accurate diary or similar record regularly maintained by the taxpayer, supplemented by verifiable documentation will usually be acceptable evidence for substantiation of wagering winnings and losses. In general, the diary should contain at least
the following information:
 "1) Date and type of specific wager or wagering activity;
 "2) Name of gambling establishment;
 "3) Address or location of gambling establishment;
 "4) Names(s) of other person(s) (if any) present with taxpayer at gambling establishment; and *Page 232 
 "5) Amount(s) won or lost.
 "Verifiable documentation for gambling transactions includes but is not limited to Forms, W — 2G; Forms 5754, Statement by Person Receiving Gambling Winnings; wagering tickets, canceled checks, credit records, bank withdrawals, and statements of actual winnings or payment slips provided to the taxpayer by the gambling establishment."
Id. (emphasis added).
3. Plaintiffs allege that the documentation they submitted to substantiate their claimed gambling losses meets the general guidelines. In such cases, the taxpayer has the "burden of showing that he is entitled to a particular deduction[.]"Betson v. Comm'r, 802 F2d 365-67 (9th Cir 1986). The Ninth Circuit Court of Appeals has clearly stated that "[t]he question of the amount of [gambling] losses sustained by a taxpayer is a question of fact to be determined from the facts of each case, established by the taxpayer's evidence, and the credibility of the taxpayer and supporting witnesses."Norgaard v. Comm'r, 939 F2d 874, 878 (1991) (Norgaard) citing Green v. Comm'r,66 TC 538, 545-46 (1976), acq, 1980-2 CB 1).
4. Most importantly, "the credibility of the taxpayer is acrucial factor." Norgaard, 939 F2d at 878
(emphasis added). In this case, Russell appeared by affidavit; Plaintiffs did not testify. There was no testimony or affidavit from supporting witnesses. The court was denied the opportunity to conclude that Plaintiffs' evidence was corroborated by "`forthright, credible and candid testimony.'" Id. at n 3 (citing Wolkomir v. Comm'r, 40 TCM (CCH) 1078, 1079-80 (1980)); see also Drews v. Comm'r, 25 TC 1354
(1956) (allowing partial deduction based on taxpayer's credible testimony concerning estimate of losses without records),acq, 1956-2 CB 1; see also Taormina v.Comm'r, 35 TCM (CCH) 400 (1976) (allowing estimated partial deduction based on losing tickets and taxpayer's credible testimony).
5-7. The court now turns to the evidence offered by Plaintiffs to support their claimed losses. Russell states in her affidavit that she kept concurrent records of her gambling activities, which she summarized on an excel spreadsheet file *Page 233 
entitled "Listing of 2001 Gambling Losses." Her spreadsheet is supported by bank credit card statements noting cash withdrawals from automatic teller machines (ATM), cash-on-hand from her personal safe, and a 2001 calendar, noting gambling days. However, it lacks the information that should be found in a diary or log, including "[n]ame of gambling establishment," "[a]ddress or location of gambling establishment," and, most importantly, "[a]mount(s) won or lost." Rev Proc 77-29. Courts have questioned "the reliability of the self-serving and uncorroborated workpapers * * *" produced to substantiate gambling losses. E.g., Hartsock, WL 2734238 at *4. Further, statements listing ATM credit card withdrawals prove that money was withdrawn, but do not prove that the money was spent and lost at a casino or other establishment offering gambling. Those statements in and of themselves are not sufficient to meet the IRS requirement of a diary or log. Defendant enumerated the many shortcomings of Russell's contemporaneous diary or log presented in the Listing of 2001 Gambling Losses. Many of the discrepancies noted by Defendant might have been explained or clarified if Russell had testified. She did not.
Plaintiffs' Memorandum in Support of Plaintiffs' Motion for Summary Judgment states that even if Plaintiffs' records are deemed insufficient, the Cohan Rule Provides Plaintiffs with relief. In Norgaard, the Ninth Circuit stated that, "[i]n order to qualify for the estimation treatment under Cohan, the taxpayer must establish that he is entitled to some deduction." Norgaard,939 F2d at 879 (citing Edelson v. Comm'r, 829 F2d 828, 831
(9th Cir 1987)). The court went on to state that
 "[h]ad the Norgaards provided a credible evidentiary basis from which the tax court could have estimated, first, their unquantified, unreported winnings, and second, their losses, they could have benefited from application of the rule of Cohan. * * * However, the rule of Cohan cannot be applied in the presence of unquantified, unreported winnings unless both winnings and losses are estimated."
Id.
Russell avers in her affidavit that it was her practice to net all winnings from a given day against all her losses *Page 234 
for a given day. Plaintiffs' Memorandum in Support of Plaintiffs' Motion for Summary Judgment cites Greenfeld v.Commissioner in support of their request that the court accept Russell's daily netting of winnings and losses. InGreenfeld v. Commissioner, the Tax Court accepted the taxpayer's method of listing the "`net'[of] the daily wins and losses" and entering "the result on master sheets which he kept for each month of the racing season." 25 TCM (CCH) 471, WL 669 (1966) (Greenfeld.)[2] The Tax Court accepted the taxpayer's method because the taxpayer "impressed" the court "with his candor and veracity in such a way as to lend credence to the substantial authenticity of his summary records" and he "supported his summary records with proof of his net worth."Id. Once again, the taxpayer's testimony was the "crucial factor." Norgaard, 939 F2d at 878. In the matter before the court, Russell's testimony was in the form of an affidavit which precluded the court from having an opportunity to assess her `Veracity." Greenfeld, 25 TCM (CCH) 471.
8, 9. On federal income tax returns, taxpayers are required to report gambling winnings as Other Income to arrive at adjusted gross income. See IRC §§ 62, 64. Gambling losses are reported as itemized deductions on Schedule A, Other Miscellaneous Deductions. See IRC §§ 63(d), 165(d). On their federal income tax return, Plaintiffs only listed as other income the gambling winnings reported on three W-2G forms issued by the casinos. Each item, gambling winnings and gambling losses, must be separately reported. Based on Russell's affidavit, the court concludes that Russell received gambling winnings in addition to those reported on W-2G forms; however, the amounts of those winnings were not reported on Plaintiffs' tax returns nor quantified for the court. Given Russell's reported gambling winnings, it is highly unlikely that there were no gambling losses. However, the court concludes that the offered evidence does not fully support Plaintiffs' claimed gambling losses. *Page 235 
10. The Norgaard holding prevents the court from applying the rule of Cohan when "[n]either winnings nor losses can reasonably be estimated." Norgaard,939 F2d at 879. The court was presented with a stipulated list of credit card cash withdrawals and approximately 79 reported times that cash amounts of $500 were taken to play Video Poker at local taverns. From that information, it is unclear how the court is to estimate gambling winnings and gambling losses. For example, is the court to conclude that all cash withdrawals resulted in no winnings and only losses? Or, is the court to conclude that 20, 30, or 50 percent of the cash withdrawals resulted in winnings; if so, what is the amount of the winnings? The court does not find the evidence sufficient to answer the issues before it. Without additional evidence, the court cannot agree that the amounts listed, including ATM cash withdrawals, "cash taken," and Russell's self-employment income, were lost. Further, there is no evidence to support the claim that a $15,800 credit line from an unidentified source was borrowed and then lost.
 III. CONCLUSION
After carefully reviewing the evidence and applicable law, the court concludes that Plaintiffs are not allowed a gambling loss deduction for tax year 2001 because there is no credible basis for determining Russell's gambling winnings and gambling losses. Now, therefore,
IT IS THE DECISION OF THIS COURT that Plaintiffs' appeal is denied.
[1] All references to the Oregon Revised Statutes (ORS) are to the 2005 provisions.
[2] The tax law has changed since Greenfeld was decided. The parties agree that IRC section 68 limits the itemized deductions of certain taxpayers like Plaintiffs who report adjusted gross income above an applicable amount. To net gambling winnings and gambling losses would understate either adjusted gross income or itemized deductions. *Page 236